**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| NOBEL BIOCARE USA, LLC et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TECHNIQUE D' USINAGE SINLAB, INC., ) <br> ) <br> Defendant. ) <br> ) | CASE NO.: 1:12-cv-00730 (LMB/TCB) |

**DEFENDANT TECHNIQUE D'USINAGE SINLAB, INC.'S**
**OPPOSITION TO PLAINTIFFS NOBEL BIOCARE USA, LLC AND**
**NOBEL BIOCARE PROCERA LLC'S MOTION TO PRECLUDE SINLAB**
**FROM PRESENTING AFFIRMATIVE EXPERT TESTIMONY ON DAMAGES**

Defendant Technique D'Usinage Sinlab, Inc. ("Sinlab"), by and through undersigned counsel, hereby submits the following Opposition to Plaintiffs Nobel Biocare USA, LLC and Nobel Biocare Procera LLC's ("Nobel") Motion to Preclude Sinlab from Presenting Affirmative Expert Testimony on Damages.

**I.     Background**

Nobel filed its complaint on July 6, 2012. Although the Complaint was never formally served on Sinlab, a Canadian corporation, Edward A. Pennington, counsel for Sinlab, entered an appearance on August 2, 2012 in an effort to facilitate settlement discussions between the parties.

On August 23, 2012, the Court issued an Order setting the initial pretrial conference for Wednesday, September 12, 2012. (D.I. 13). This Order also mandated that any party required to file an answer must do so within twenty days. *Id*. On August 31, 2012, Sinlab filed an unopposed motion to extend the time for the Rule 16(b) conference and the deadline for its responsive pleading. (D.I. 14). The Court granted Sinlab's motion in part on September 4, 2012, ordering that the Rule 16(b) Conference would take place on September 26, 2012, that Sinlab

1

answer or otherwise respond to the Complaint by September 26, 2012, and that the parties file a joint discovery plan by September 19, 2012.  (D.I. 16).

In the joint discovery plan filed on September 19, 2012, the parties explained that the deadlines originally set in the Court's August 23, 2012 Order were unworkable in this case:

> The parties anticipate that many of the relevant witnesses in this case reside abroad, and obtaining their testimony is likely to take significantly longer than would be typical for domestic witnesses. Further, the parties respectfully submit that it is not feasible to complete the fact and expert discovery necessary for a case involving five patents and complex technology in the timeframe currently set by the Court.

(D.I. 21 at 2).  Accordingly, the parties jointly requested a continuance of the fact and expert discovery deadlines by three-and-a-half months – from December 14, 2012 to March 1, 2013. (*Id.* at 1).  The parties further agreed that initial expert disclosures should be made no later than January 16, 2013, with rebuttal disclosures due on February 6, 2013 and the close of expert discovery occurring on March 1, 2013.  (*Id*. at 6).  Given the modesty of the jointly requested extension and the fact that both parties agreed that it was not feasible to complete the necessary discovery in this case absent an extension, Sinlab expected that it would have a few months during which to identify expert witnesses, educate the experts on the issues at hand, serve discovery requests relevant to the experts' expected testimony, receive and review responses to those requests, and allow the experts sufficient time to prepare their reports.  Indeed, its Answer or other responsive pleading was not even due until September 26, 2012.

On that day, the Court conducted the initial pretrial conference and denied the parties' joint request to extend the discovery deadline, instead setting December 14, 2012 as the deadline by which fact and expert discovery had to be completed.  (D.I. 23 at 4).  The Court further ordered that expert disclosures be served in accordance with Federal Rule of Civil Procedure

26(a) and Local Civil Rule 26(d)(2-4). (*Id.* at 9). Thus, affirmative expert disclosures were due on October 15, 2012 – a mere <u>nineteen</u> days later. At the time the Court entered its Order, Sinlab had not even filed an answer or other responsive pleading to the Complaint – which, again, had not been formally served on Sinlab in Canada. Nor had Sinlab identified its asserted claims or accused products or propounded discovery of any kind.

Sinlab subsequently requested an extension of the deadline for affirmative expert disclosures. (D.I. 28). The Court denied Sinlab's request, explaining that because the parties have engaged in patent infringement disputes in Canada and elsewhere, that Sinlab should have been on notice that it would need to timely identify and disclose its expert's opinions. (D.I. 31).

## II. <u>Argument</u>

The extraordinarily compacted schedule affected Sinlab, as a counterclaim plaintiff claiming infringement and damages resulting from that infringement, to a much greater degree than it did Nobel, a declaratory judgment plaintiff seeking a judgment of invalidity. On the Court's October 15, 2012 deadline for filing affirmative expert disclosures, Sinlab was required to file expert reports on infringement and damages, whereas Nobel only had to file a report concerning invalidity.

This deadline had a drastically disproportionate negative impact on Sinlab. In order to file its report on damages, Sinlab needed certain financial information and business records that were solely in the possession of Nobel at the time the reports were due. In order to obtain the information and documentation required for its affirmative expert disclosure concerning damages, Sinlab was required to conduct extensive discovery through document requests and interrogatories. No discovery requests were served by Sinlab prior to the date of the scheduling order, as Sinlab was operating under the assumption that the parties' joint proposed discovery

26(a) and Local Civil Rule 26(d)(2-4). (*Id.* at 9). Thus, affirmative expert disclosures were due on October 15, 2012 – a mere <u>nineteen</u> days later. At the time the Court entered its Order, Sinlab had not even filed an answer or other responsive pleading to the Complaint – which, again, had not been formally served on Sinlab in Canada. Nor had Sinlab identified its asserted claims or accused products or propounded discovery of any kind.

Sinlab subsequently requested an extension of the deadline for affirmative expert disclosures. (D.I. 28). The Court denied Sinlab's request, explaining that because the parties have engaged in patent infringement disputes in Canada and elsewhere, that Sinlab should have been on notice that it would need to timely identify and disclose its expert's opinions. (D.I. 31).

**II.**     <u>**Argument**</u>

The extraordinarily compacted schedule affected Sinlab, as a counterclaim plaintiff claiming infringement and damages resulting from that infringement, to a much greater degree than it did Nobel, a declaratory judgment plaintiff seeking a judgment of invalidity. On the Court's October 15, 2012 deadline for filing affirmative expert disclosures, Sinlab was required to file expert reports on infringement and damages, whereas Nobel only had to file a report concerning invalidity.

This deadline had a drastically disproportionate negative impact on Sinlab. In order to file its report on damages, Sinlab needed certain financial information and business records that were solely in the possession of Nobel at the time the reports were due. In order to obtain the information and documentation required for its affirmative expert disclosure concerning damages, Sinlab was required to conduct extensive discovery through document requests and interrogatories. No discovery requests were served by Sinlab prior to the date of the scheduling order, as Sinlab was operating under the assumption that the parties' joint proposed discovery

plan would be approved by the Court.  Indeed, Sinlab was not even required to file its answer to the complaint before the scheduling order had been entered.  As discussed in more detail below, Sinlab subsequently served Nobel with appropriate discovery requests directed to information that would be pertinent to the issues of damages, but even if Sinlab had filed those requests on September 26, 2012, the day that it was required to respond to the Complaint and the day the Court's Scheduling Order was entered, Nobel's response would not have been due until ***eleven days after*** the deadline for affirmative expert disclosures had passed.  Moreover, although the Court noted that the parties have been in litigation in Canada (and elsewhere), a reasonable royalty damages calculation – and certainly not a damages calculation based on infringement of United States patents – could not be performed based on information obtained in foreign litigation.

In contrast, Nobel's affirmative expert reports on invalidity were based entirely on publicly available information.  Nobel contends that the patents-in-suit are invalid in view of prior art references – which must be publicly available in order to constitute prior art.  Nobel's experts also contend that certain claims of the patents-in-suit are invalid due to lack of enablement or indefiniteness – allegations which are based solely on the contents of the patents-in-suit themselves.  Thus, Nobel's expert witnesses did not require any discovery from Sinlab in order to prepare affirmative expert reports on invalidity.

Sinlab has since served Nobel with discovery requests which, assuming Nobel responds fully and completely, would yield production of the relevant information and documentation necessary for Mr. Gallagher to complete his damages calculation.  Specifically, Sinlab has requested specific information regarding the domestic and foreign sales volume of Nobel's accused products, both in terms of units and dollars.  (Ex. 1, Sinlab's First Set of Interrogatories

to Nobel, at 9, 12) (Interrogatory Nos. 5, 6, 17).  Additionally, Sinlab requested documents from Nobel requesting documents and communications regarding projected and actual sales volume, sales records and sales prices, gross and net profit, revenue, business financial records of projected and actual profitability, customer lists, and other sales data.  (Ex. 2, Sinlab's First Set of Document Requests to Nobel, at 8, 9-12) (Document Request Nos. 1, 9-18, 25).  As of the date of Nobel's filing of this motion, the due dates for Nobel's responses to Sinlab's interrogatories and document requests have not yet come to pass.[1]  Again, even if Sinlab had served this discovery on the day it answered the Complaint, the responses would have remained in the sole possession of Nobel until at least October 26, 2012, a full eleven days after affirmative expert disclosures were due.

     Mr. Gallagher's report, while admittedly missing a specific percentage representing a reasonable royalty and dollar figure representing total damages owed by Nobel, lays out in detail the information Mr. Gallagher would need in order to deliver his full opinion on damages.  Indeed, Mr. Gallagher expressly states that in order to arrive at his damages calculation, he would need to obtain additional information, including the number of units of the accused Nobel products that were sold, the sales value of those units, and the profits corresponding to those sales.  This additional information was solely in the possession of Nobel at the time Mr. Gallagher prepared his expert report.  Because Mr. Gallagher's proposed methodology is disclosed in his expert report and Nobel will have every opportunity to obtain information regarding Mr. Gallagher's conclusions through deposition, his report should not be stricken and he should not be precluded from testifying as Sinlab's damages expert at trial.

---

[1] On October 9, 2012, six days before affirmative expert disclosures were due, Nobel produced a "document dump" of 17,000 individual documents, consisting of over 107,000 pages.  The documents were produced on 63 CDs and DVDs without Bates numbers or load files and were not text-searchable.

**III.     Conclusion**

Whereas Sinlab was severely impacted by the compressed schedule, Nobel suffered no harm. This manifest unfairness to Sinlab should not be exacerbated by striking Mr. Gallagher's expert report and precluding Mr. Gallagher from testifying at trial. For all the foregoing reasons, Sinlab respectfully request that Nobel's motion to strike be denied.

Date:   November 7, 2012

Respectfully submitted,

/s/ Edward A. Pennington
Edward A. Pennington (VSB No. 23511)
eap@murphyking.com
MURPHY & KING, P.C.
1055 Thomas Jefferson Street, NW
Suite 400
Washington, DC 20007
Tel: (202) 403-2100
Fax: (202) 429-4380

*Counsel for Defendant and Counterclaim Plaintiff Technique D'Usinage Sinlab, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of November, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) to the following:

    Jeffry H. Nelson (VBN 22450)
    jhn@nixonvan.com
    Michael E. Crawford (VBN 39566)
    mec@nixonvan.com
    NIXON & VANDERHYE P.C.
    901 N. Glebe Rd.
    Arlington, VA 22203
    Phone: 703-816-4000
    Fax: 703-816-4100

    John B. Sganga, Jr. (pro hac vice)
    john.sganga@knobbe.com
    Sheila N. Swaroop (pro hac vice)
    sheila.swaroop@knobbe.com
    KNOBBE, MARTENS, OLSON & BEAR, LLP
    2040 Main Street, 14th Floor
    Irvine, CA 92614
    Phone: 949-760-0404
    Fax: 949-760-9502

    *Counsel for Plaintiffs*
    NOBEL BIOCARE USA, LLC and
    NOBEL BIOCARE PROCERA LLC

    By: /s/ Edward A. Pennington
    Edward A. Pennington (VSB No. 23511)
    MURPHY & KING, P.C.
    1055 Thomas Jefferson Street, NW
    Suite 400
    Washington, DC 20007
    Tel: (202) 403-2101
    Fax: (202) 429-4380
    Email: eap@murphyking.com

    *Counsel for Defendant and Counterclaim Plaintiff*
    *Technique D'Usinage Sinlab, Inc.*