IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NOBEL BIOCARE USA, LLC, a )
   Delaware limited liability )
   company, et al., )
                                           )
    Plaintiffs and Counter )
      Defendants, )
                                           )   1:12cv730 (LMB/TCB)
v. )
                                           )
TECHNIQUE D'USINAGE SINLAB, INC., )
   a Canadian corporation, )
                                           )
    Defendant and Counter )
      Claimant. )

## MEMORANDUM OPINION

Before the Court are the plaintiffs' Bill of Costs and Motion for Attorney's Fees, both of which are opposed by the defendant. For the reasons stated in open court and further explained in this Memorandum Opinion, the plaintiffs' Bill of Costs, which seeks an award totaling $65,101.52, will be approved, but for the lesser amount of $43,520.33, and the plaintiffs' Motion for Attorney's Fees will be denied.

### I. THE BILL OF COSTS

A prevailing party may recover costs, other than attorney's fees, under Fed. R. Civ. P. 54(d)(1); however, this rule does not give the district court "unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case." Farmer v.

Arabian Am. Oil Co., 379 U.S. 227, 235 (1964). Instead, the court may tax only those costs authorized by statute. See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987). The general taxation of costs statute, 28 U.S.C. § 1920, provides six categories of costs that may be taxed: (1) clerk and marshal fees, (2) transcript fees (3) printing and witness fees, (4) copying fees, (5) docket fees under 28 U.S.C. § 1923, and (6) compensation of court appointed experts, interpreters, and special interpretation services. Within those categories, "the court has wide latitude to award costs." Francisco v. Verizon S., Inc., 272 F.R.D. 436, 441 (E.D. Va. 2011).

Although there is a presumption that a prevailing party is entitled to costs unless the opposing party can show otherwise, see Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999), the prevailing party "bears the burden of showing that the requested costs are allowable under § 1920." Francisco, 272 F.R.D. at 441 (citing Cofield v. Crumpler, 179 F.R.D. 510, 514 (E.D. Va. 1998)). Once the prevailing party has met this burden, the burden shifts to the non-prevailing party to identify any improprieties. Id.

A. **Overview**

Plaintiffs Nobel Biocare USA, LLC, and Nobel Biocare Procera LLC (collectively, "Nobel") request $65,101.52 in costs, broken down into three categories:

- Fees of the Clerk: $875.00. Specifically, $350.00 for the filing fee and $525.00 for seven attorneys' pro hac vice admissions, each costing $75.00;

- Fees for printed or electronically recorded transcripts necessarily obtained for use in the case: $15,470.89; and

- Fees for exemplification and copies of papers necessarily obtained for use in the case: $48,755.63.

See Pls.' Notice of Application to the Clerk to Tax Costs [Dkt. No. 109] ("Pls.' Notice") at 1-3.

The defendant, Technique D'Usinage Sinlab, Inc. ("Sinlab"), does not argue that all costs should be denied, but requests that the amount be reduced by $58,473.92. See Def.'s Objections to Pls.' Bill of Costs [Dkt. No. 115] ("Def.'s Objections") at 9. Specifically, defendant argues that the pro hac vice fees should be denied, or at least reduced because seven pro hac vice applications were excessive; that the transcript fees should be reduced by $4,654,69.00 for expedited rates and by $5,245.00 for videographer fees; and that the fees for exemplification and copies should be reduced by a total of $48,049.23 for costs the defendant contends are not recoverable, specifically by $2,397.70 for translations, by $30,480.34 for electronic

3

production, by $14,759.47 for copies of trial exhibits, and by $411.72 for the cost of obtaining prior art publications.

### B. Pro Hac Vice Fees

Defendant argues that plaintiffs' pro hac vice application fees should not be taxed at all (resulting in the requested reduction of $525.00) because such fees are not listed in the local taxation of costs guidelines[1] and those guidelines state that other "miscellaneous fees" are not taxable. Although these fees are not listed, other courts in this district have awarded them as "fees of the clerk." See, e.g., Mann v. Heckler & Koch Def., Inc., No. 1:08cv611, 2011 WL 1599580, at *2 (E.D. Va. Apr. 28, 2011); Synergistic Int'l, LLC v. Korman, 2007 WL 517676, No. 2:05cv49, at *2 (E.D. Va. Feb. 8, 2007).

Defendant argues that even if such fees were allowable as costs, three of the pro hac vice fees were clearly unnecessary because those attorneys did not appear at any court proceedings or any depositions, citing Mann in support. Mann is not entirely on point because the attorney whose fee was at issue in Mann had been deposed as a witness before he was admitted pro hac vice; thus, it was known when he was admitted that he would be unable to enter an appearance in the proceeding. No similar factual circumstances appear to be present in this instance.

---

[1] Taxation of Costs Guidelines (rev. Jan. 28, 2011), http://www.vaed.uscourts.gov/formsandfees/documents/TaxationofCostsGuidelines1-28-11.pdf [hereinafter Costs Guidelines].

4

Nevertheless, plaintiffs have not shown the need for seven pro hac vice admissions, especially when two local counsel also noticed appearances in the litigation. Accordingly, defendant's objection to three of those fees will be sustained and the Bill of Costs will be reduced by $225.00.

### C. Expedited Transcript Fees

Taxing fees for the expedited production of transcripts is "not allowed absent a showing of necessity." Ferris v. AAF-McQuay, Inc., No. 5:06cv82, 2008 WL 495656, at *1 (W.D. Va. Feb. 21, 2008). Plaintiffs argue that expedited production was necessary because all of the witness depositions took place in the middle of the parties' briefing on claim construction, summary judgment, and motions in limine, and very close to the December 14, 2012, close of discovery. Pls.' Notice at 2 n.2. Defendant responds that plaintiffs "failed to show that expedited transcripts were necessary for any reason other than [their] own delay in deposition scheduling." Def.'s Objections at 3. Plaintiffs contest that characterization, arguing that the compressed schedule was due to defendant's "inability to make its witnesses available before the Court's December 7 motion filing deadline," despite plaintiffs' service of the Fed. R. Civ. P. 30(b)(6) notice months earlier on October 5, 2012, and their service of deposition notices in November. Pls.' Reply to Def.'s Objections to Req. to Tax Costs [Dkt. No. 118]

("Pls.' Reply") at 2. Moreover, plaintiffs observe that defendant noticed plaintiffs' Fed. R. Civ. P. 30(b)(6) depositions for December 14, 2012, the last day to complete discovery, despite plaintiffs' making those witnesses available before that date. Id. Accordingly, it appears that it was not plaintiffs but defendant who delayed the deposition scheduling.

Defendant also argues that plaintiffs filed their motion for summary judgment and claim construction and their motion in limine after taking only one deposition, insinuating that the fees for expedited transcripts could have been avoided had plaintiffs waited to file their motions. The original scheduling order provided that opening claim construction briefs would be due on November 6, 2012, and that summary judgment motions were due "as soon as possible at the close of discovery," which was set for December 14, 2012. Rule 16(b) Scheduling Order [Dkt. No. 23]. This schedule was later adjusted by an Order [Dkt. No. 37] requiring that claim construction briefs and the parties' motions for summary judgment be filed by December 7, 2012. Accordingly, the claim construction and summary judgment briefing schedule was set by the Court and not a precipitous action taken by plaintiffs.

Finally, defendant argues that plaintiffs did not cite one of the deponent's testimony in its motions, although all the other depositions were cited. The absence of citation is not

6

fatal to the request for taxation of the cost of producing that deposition transcript, however, because transcripts must often be reviewed before informed decisions about inclusion can be made. Given the short time frame that the parties had in which to conduct discovery and file their motions, the defendant's delays in arranging for timely depositions necessitated the expedited production of deposition transcripts. For these reasons, defendant's objection will be overruled and plaintiffs will be awarded $4,654.69 in fees for the expedited production of transcripts.

### D. **Videographer Fees**

Videography fees for depositions are available only if "necessarily obtained for use in the case." Cherry, 186 F.3d at 449 (quoting 28 U.S.C. § 1920(2)) (internal quotation marks omitted). Plaintiffs argue that they are entitled to videographer fees because it was uncertain which witnesses would be available for trial and because the witnesses were outside the subpoena power of the court, citing Mann as an example of another court in this district that allowed such fees in similar circumstances. In Mann, the court observed that the non-prevailing party had not responded to these arguments. See 2011 WL 1599581, at *6. In this instance, however, defendant cogently argues that plaintiffs have not adequately demonstrated why transcripts would not have been sufficient, observing that

"[t]he concept of necessity for use in the case connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial." Def.'s Objections at 4 (quoting Cherry, 186 F.3d at 449).

Additionally, the local guidelines provide that "[t]he costs of a videotaped deposition, unless an authorizing order or stipulation provides for taxing of these costs," is generally not taxable. See Costs Guidelines at 5. For these reasons, defendant's objection will be sustained and the costs for transcripts will be reduced by $5,245.00.

### E. Translation of Trial Exhibits

The local guidelines provide that the "cost of securing translation" is taxable "if the document translated is taxable or the translation is necessary for exemplification of matters before the court." Costs Guidelines at 4. The translated proposed trial exhibits were: (1) a Sinlab business plan, and (2) three prior art references. Summary judgment in this case was granted on January 11, 2013, over two weeks before the January 28, 2013 trial date. Accordingly, costs associated with trial exhibits generally were not necessary. Moreover, plaintiffs have not met their burden of showing that the defendant's business plan was necessary because the plan had no relevance to the key issues in the litigation, which involved claims of patent infringement and patent validity. On the other

hand, the three prior art references, which were translated early in the discovery process to make them available to plaintiffs' invalidity expert while he was drafting his opening expert report, were relevant to the litigation.

For these reasons, plaintiffs have met their burden for the costs of translating the three prior art references but not defendant's business plan. Accordingly, plaintiffs' claim for translation costs will be reduced by $940.00 to $1,457.70. See Bill of Costs [Dkt. No. 111], Exs. 16 (business plan translation invoice), 17 (prior art translation invoice).

### F. Copying of Trial Exhibits

The local guidelines provide that "[t]he reasonable cost of documentary exhibits admitted into evidence at hearing or trial is . . . taxable, including the provision of additional copies for the Court and opposing parties." Costs Guidelines at 4. Because summary judgment was granted over two weeks before trial, none of the plaintiffs' 793 proposed trial exhibits were admitted into evidence or submitted to the Court. Plaintiffs cite two cases, Tilton v. Capital Cities/ABC, Inc., 115 F.3d 1471 (10th Cir. 1997), and Desisto College, Inc. v. Howey-in-the-Hills, 718 F. Supp. 906 (M.D. Fla. 1989), in which courts allowed the taxing of costs for copies of trial exhibits in cases decided on summary judgment. Neither of those cases makes

clear, however, how soon after summary judgment trial was scheduled to begin, and neither case is from this district.

Plaintiffs further argue that these costs were necessary because they were required to submit their trial exhibits three days before the commencement of trial and because the parties had not agreed to exchange electronic exhibits. Although plaintiffs argue that they began the copying process in January 2013 "in order to timely complete these copies," there was sufficient time between the motion hearing and trial to have waited to make the copies. For these reasons, the Court finds that these costs were premature and therefore unavailable. Accordingly, the objection will be sustained and $14,759.47 will be deducted from the Bill of Costs.

### G. Prior Art Publications

Plaintiffs seek $411.72 in "[c]osts for prior art publications," or more specifically the costs incurred "to order copies of publications from third parties." Pls.' Reply at 7. Defendant argues that although the cost of obtaining prior art patents are taxable under the local guidelines at the rate charged by the patent office, costs for obtaining prior art publications are not mentioned. Def.'s Objections at 8. Plaintiffs counter that the guidelines permit taxation of "[t]he reasonable cost of copies of papers necessarily obtained from

third-party records custodians," which they argue this category constitutes. Pls.' Reply at 7.

Defendant further argues that the invoices do not clearly establish whether the publications obtained were for "prior art" or for other research purposes, because the only invoices attached that predate plaintiffs' affirmative expert report on invalidity were for publications that did not form the basis of plaintiffs' invalidity arguments. In response, plaintiffs argue that the publications listed in the invoices were all identified as exhibits in its pretrial exhibit list. Plaintiffs have not met their burden of showing that these publications were necessarily obtained from third-party records custodians, and defendant's objection will be sustained, reducing the Bill of Costs by an additional $411.72.

### H. Document Production

Plaintiffs paid a total of $30,480.34, which equates to around 7 cents per page, to outside vendors for "TIFF productions" and "Native productions." See Notice at 4; Bill of Costs [Dkt. No. 111], Exs. 18, 19. Defendant characterizes this cost as "electronic production," Def.'s Objections at 5, whereas plaintiffs characterize it as costs "incurred to provide documents to Sinlab in the TIFF format agreed upon by the parties and approved by the Court," Pls.' Reply at 4. Plaintiffs further observe that they are not requesting the

11

costs involved in setting up the electronic database or for data extraction and storage, but are only requesting the costs of producing the e-discovery documents in the format to which the parties had agreed.

The Joint Discovery Plan proposed by the parties and adopted with modifications by the Court provided:

> The producing party may produce ESI in native format or multiple page, searchable TIFF or PDF format at a resolution of at least 300 dpi. If the producing party produces in a non-native multiple page format, the producing party shall also provide . . . image load files that indicate the beginning and ending of each document. For documents which already exist in PDF format . . . the producing party may provide them in that same PDF format, whether searchable or non-searchable. For documents converted to multiple page TIFF or PDF format prior to production, the producing party shall make reasonable efforts to convert to searchable TIFF or PDF.

Scheduling Order [Dkt. No. 23], Joint Discovery Plan § V(G). The highlighted portions of the invoices attached as Exhibits 18 and 19 to the Bill of Costs indicate that the fees for TIFF productions totaled $29,009.34, and the fees for Native Productions totaled $1,471.00. These fees consisted of:

- $9,017.00: TIFF Productions (121,080 pages of Bates endorse, confidentiality endorse, format production data, copy to external media), Ex. 18.

- $568.90: Native Productions (889 docs of Bates rename, format production data, copy to external media), Ex. 18.

- $19,513.58: TIFF Productions (286,054 pages of Bates endorse, confidentiality endorse, format production data, copy to external hard drive), Ex. 19.

- $675.70: Native Productions (157 docs of Bates rename, format production data, copy to external media), Ex. 19.
- $478.76: TIFF Productions (2,344 pages of Bates endorse, confidentiality endorse, format production data, copy to external hard drive), Ex. 19.
- $226.40: Native Productions (14 docs of Bates rename, format production data, copy to external media), Ex. 19.

Both parties cite several cases to support their respective positions on this issue. Defendant relies on Fells v. Virginia Department of Transportation, in which the court denied the prevailing party's request for costs of "electronic records initial processing, Metadata extraction, [and] file conversion." 605 F. Supp. 2d 740, 743 (E.D. Va. 2009). This case does not support the defendant's objection, however, because plaintiffs are not seeking to recover those costs, but only their production costs. See also Kellogg Brown & Root Int'l, Inc. v. Altanmia Commercial Mktg. Co., W.L.L., No. H-07-2684, 2009 WL 1457632, at *5 (S.D. Tex. May 26, 2009) (holding that "costs for data extraction and storage are not recoverable"), cited in Def.'s Objections at 6. Defendant also cites to D&B Countryside, LLC v. Newell, in which the court did not allow the prevailing party the costs "spent in photocopying and labeling [Bates stamping] documents that [non-prevailing party] produced in discovery." 217 B.R. 72, 80 (Bankr. E.D. Va. 1998). It did, however, allow the $41.50 spent by the prevailing party "in producing documents" for the non-prevailing party.

Plaintiffs rely on several cases in response to defendant's argument that "[n]either the act of converting electronic files to TIFF format, nor the act of producing electronic files natively, can be considered 'copying' in the context of 28 U.S.C. § 1920(4)," Def.'s Objections at 6. These cases generally hold that the costs of file format conversion, electronic Bates stamping, and other costs of actually producing documents for electronic discovery are taxable as the functional equivalent of copies. See Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 171 & n.11 (3d Cir. 2012), cert denied 133 S. Ct. 233 (2012) (reversing much of the district court's award of $365,000 in electronic discovery costs, but allowing approximately $30,000 for "scanning and file format conversion" as it was "the functional equivalent of making copies" under the statute); Alzheimer's Inst. of Am., Inc. v. Elan Corp. PLC, No. C-10-00482-EDL, Pls.' Reply, Ex. 42, at 8 (N.D. Cal. Jan. 31, 2013) (deciding that "scanning and converting the database documents into .TIFF format, Bates stamping, OCR, and loadfile generation are taxable costs where the other party requests documents in that format," in a case where "the parties agreed that documents would be produced in .TIFF format with full text extraction"); Plantronics, Inc. v. Aliph, Inc., No. C-09-01714-WHA, 2012 WL 6761576, at *12 (N.D. Cal. Oct. 23, 2012) (observing that the non-prevailing party

"does not really dispute that converting electronically-stored files in a native format to a TIFF format also is the equivalent of making a copy, and courts agree," and further finding that "electronically stamping [Bates numbers] should be a taxable cost"); Jardin v. DATAllegro, Inc., No. 08-cv-1462-IEG, 2011 WL 4835742, at *5-9 (S.D. Cal. Oct. 12, 2011) (allowing costs to be taxed for converting data to the TIFF format and for the "project management" of that conversion); Fast Memory Erase, LLC v. Spansion, Inc., No. 3-10-CV-0481-M-BD, 2010 WL 5093945, at *4-5 (N.D. Tex. Nov. 10, 2010) (awarding $197,637.72 in costs "for creating TIFF/OCR images of documents responsive to [non-prevailing party]'s discovery requests" when the requests for production required that documents be produced in that format).

Accordingly, all of the cited authorities agree that although the costs of collecting, storing, and extracting electronically stored information may not be taxable, the costs of converting that information into the agreed-upon format and electronically Bates stamping it are analogous to copying costs, and therefore are taxable. Given the cited authority and this Court's conclusion that such production is equivalent to producing copies, the defendant's objection will be overruled and these costs will be allowed.

## I. Total

In summary, plaintiffs' request for $65,101.52 in costs will be reduced by $225.00 for unnecessary pro hac vice application fees, by $5,245.00 for videographer fees, by $940.00 for the translation of the defendant's business plan, by $14,759.47 for the costs of copying proposed trial exhibits, and by $411.72 for the costs of obtaining prior art publications, resulting in an award of $43,520.33 in costs.

## II. MOTION FOR ATTORNEY'S FEES AND EXPERT FEES

### A. Standard of Review

In their Motion for Attorney's Fees, plaintiffs seek $617,067.00 in attorney's fees and $39,250.00 in expert witness fees for successfully defending against defendant's counterclaims alleging that plaintiffs infringed its drill guide patents. Reasonable attorney's fees may be awarded to the prevailing party in a patent infringement action only if the action is deemed "exceptional." 35 U.S.C. § 285. A civil action is "exceptional under § 285 if there has been some inappropriate conduct relating to the matter in litigation." Raylon, LLC v. Complus Data Innovations, Inc., 700 F.3d 1361, 1370 (Fed. Cir. 2012). In the absence of misconduct in litigation or in securing the patent, "a case is exceptional under § 285 if (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." Id.

(quoting Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005)) (internal quotation marks omitted). Litigation is objectively baseless when the allegations are "such that no reasonable litigant could reasonably expect success on the merits." Id. (quoting Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH, 524 F.3d 1254, 1260 (Fed. Cir. 2008)) (internal quotation mark omitted). The prevailing party must prove that a case is exceptional by clear and convincing evidence. Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 687 F.3d 1300, 1308 (Fed. Cir. 2012).

Additionally, after making a finding of fraud or bad faith, "[a] district court has inherent authority to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 921 (Fed. Cir. 2012) (quoting Takeda Chem. Indus. Ltd. v. Mylan Labs., Inc., 549 F.3d 1381, 1391 (Fed. Cir. 2008)) (internal quotation marks omitted).

### B. Analysis

The Court finds that the defendant's counterclaim was not objectively baseless because the Court is sympathetic to defendant's argument that the law governing joint direct infringement is unsettled. A failure to produce sufficient evidence supporting a theory of joint direct infringement was the basis for the Court's grant of summary judgment in favor of

the plaintiffs. Plaintiffs' argument that defendant's evidence of joint direct infringement was insufficient as a matter of law was accepted by the Court on the merits; however, it does not meet the high standard required for a suit to be considered "objectively baseless."

The Court further finds that the litigation was not undertaken in bad faith because the evidence plaintiffs marshal in support of their argument is better understood as stemming from defendant's inability to comply with the strict discovery deadlines imposed in this district than from an intentionally vexatious litigation strategy. Moreover, although defendant may have "provoked" litigation by sending cease and desist letters, ultimately it was the plaintiffs who chose to initiate the instant litigation.

Although defendant's conduct in this litigation was not exemplary, the Court finds that plaintiffs have not carried their burden of proving this to be an exceptional case under 35 U.S.C. § 285. Because the Court found that the litigation was not undertaken in bad faith, it will not impose expert witness fees on defendant as a sanction.

III. CONCLUSION

For the reasons stated above, plaintiffs' Motion for Attorney's Fees will be DENIED, defendant's Objections to Plaintiffs' Bill of Costs will be SUSTAINED IN PART and OVERRULED IN PART, and a Bill of Costs awarding plaintiffs $43,520.33 will be approved by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 4th day of March, 2013.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge